UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HUMPHRIES, CDCR #C-56160,<br><br>Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOME, AKINWUML, M.D., L. SAIDRO, M.D., M. GLYNN, S. ROBERTS, M.D., A. SAZON,<br><br>Defendants. | Case No.: 3:20-cv-0659-JAH-WVG<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**2) DENYING REQUEST TO TRANSFER TO APPROPRIATE DISTRICT [ECF No. 6]**<br><br>**AND**<br><br>**3) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A(b)** |

Joseph Humphries ("Plaintiff"), incarcerated at R.J. Donavan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this case with a civil rights Complaint ("Compl.") filed pursuant to 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.) Plaintiff has not prepaid the $400 civil filing fee required by 28 U.S.C. § 1914(a); instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28

U.S.C. § 1915(a). (*See* ECF No. 2.) He has also filed a "Request to Transfer Case to the Appropriate District." (*See* ECF No. 6.)

## I.     Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002). Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to

/ / /

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report as well as a Prison Certificate completed by an accounting officer at RJD. *See* ECF No. 3 at 1–3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff maintained an average monthly balance of $264.33, and had $195.55 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. His available balance as of April 7, 2020, was $192.06. (*See* ECF No. 3 at 1.)

Therefore, the Court GRANTS Plaintiff's Motion (ECF No. 2) and assesses an initial partial filing fee of $52.86, pursuant to 28 U.S.C. § 1915(b)(1). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

**II.     Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B) & 1915A(b)**

A.     <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

/ / /

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* Fed. R. Civ. R. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hall Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 152, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

B.   Plaintiff's Allegations

In his Complaint, Plaintiff states that he suffers from cirrhosis of the liver as a result of having chronic hepatitis C. (*See* Compl. at 3.) Plaintiff indicates that he was diagnosed with hepatitis C in March 2015. (*See id.*, Ex. B at 14.) Plaintiff alleges he

received medical care for his hepatitis C at Pleasant Valley State Prison ("PVSP"), prior to being transferred to RJD. Plaintiff states that he went "to [the] medical department for hepatitis C for the longest time for treatment." (*Id.*) He claims, however, that due to inadequate medical care, his "condition worsened and eventually turned into cirrhosis of [the] liver." (*Id.*) At some point, Plaintiff was transferred to RJD.[2] Plaintiff argues that various staff members at PVSP and RJD acted with "deliberate indifference to [his] serious medical need[s]" by allowing his chronic hepatitis C to eventually cause cirrhosis of the liver. (*Id.*)

Specifically, Plaintiff asserts that Dr. Akinwuml, who appears to have been a medical doctor on staff at PVSP in 2015 when Petitioner was incarcerated there, "failed to administer proper medical treatment to him and was the prime defendant to act in concert with the other defendants" who were deliberately indifferent toward his medical needs. (Compl. at 4.) He contends that, as a result, his "condition . . . became worse a few days, months later, prior to his transfer to [RJD]." (*Id.*) Petitioner claims Dr. Akinwuml had "all the authority and expertise" to effectively treat his hepatitis C, but due to his deliberate indifference, Plaintiff's condition worsened and "turned into cirrhosis of the liver." (*Id.*)

Plaintiff further contends that medical staff at RJD, including Dr. Roberts, A. Sazon, and Dr. Saidro, failed to properly attend to his medical needs after he was transferred there. He claims Dr. Roberts "failed to treat and care for [him]" when he visited Roberts for "legal treatment [of] his hepatitis C." (*Id.* at 2.) Plaintiff also claims that Sazon, a registered nurse at RJD, "could have acted to assist '[him] in his needs [for] the [hepatitis C] treatment but instead . . . act[ed] in concert with all the named defendants" to deprive him of his Eighth Amendment rights. (*Id.* at 2.) Finally, he

---

[2] It is not clear from the facts alleged in the Complaint precisely when Plaintiff was transferred to RJD from PVSP, but it was sometime after March 2015 and before July 2018. (*See* Compl. Ex. A at 9; Ex. B at 14.)

contends Dr. Saidro "failed to treat and or administer a viable treatment" which "further allowed for cirrhosis of [his] liver." (*Id.*)

Plaintiff also claims he was denied due process and access to courts by a prison official at RJD. He states that Defendant M. Glynn, purportedly the "executive officer of the appeals process at [RJD,] had the authority to look at the contentions [contained in Plaintiff's inmate grievances regarding his medical care] and to make sure the issues were in accordance with standing law." (*Id.* at 5.) He asserts Glynn "could have ordered the matter back to the doctors (defendants) for further action, but failed to do so, thereby denying me the right to access the courts and rights under both the United States and California Constitutions..." (*Id.*)

Plaintiff claims Defendants violated his rights to "proper medical care" and "due process" and he seeks $2.5 million in compensatory damages, $3.5 million in punitive damages and "any other action the court may deem appropriate ... and in the interest of justice." (*Id.* at 7.)

C.  42 U.S.C. § 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("[M]unicipalities and other local governmental units … [are] among those persons to whom § 1983 applies."). To state a claim under section 1983, Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

D.  Governor Newsome

In the caption of his Complaint, Plaintiff names Governor Gavin Newsome as a defendant. (*See* Compl. at 1.) Plaintiff, however, does not allege any facts in the body of the Complaint as to how Newsome's conduct amounted to a violation of his

Constitutional rights. (*See generally*, *id.*) "All § 1983 claims must be premised on a constitutional violation." *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009). To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his constitutional rights. *Iqbal*, 556 U.S. at 673; *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014). Plaintiff's Complaint contains no "factual content" describing Newsome's direct involvement in any constitutional injury actually suffered by Plaintiff sufficient to "allow[ ] the court to draw the reasonable inference that the [Defendant] is liable" for any constitutional violation. *See Iqbal*, 556 U.S. at 678.

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08 (internal quotation marks, citation, and alterations omitted).

Plaintiff does not allege that Newsome was actually aware of Plaintiff's medical needs or played any direct role in his medical treatment. (*See generally*, Compl. at 1–6.) Indeed, Plaintiff fails to allege that Newsome personally participated in, or directed his subordinates to do, anything which caused an actual violation of Plaintiff's constitutional rights. *Jones*, 297 F.3d at 934; *Starr*, 625 F.3d at 1205–06; *Redman v. City of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (finding supervisory personnel liable only when an adequate causal connection is alleged between the Defendant's breach of duty and the plaintiff's constitutional injury).

"Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, as currently pleaded, the Court finds Plaintiff's Complaint amounts to no more than

"an unadorned, the defendant[s]-unlawfully-harmed-me-accusation," that "stops short of the line between possibility and plausibility" that he is entitled to relief. *Id*. at 678. Therefore, it "fails to state a claim to relief that is plausible on its face," *Id*.; *Taylor*, 880 F.2d at 1045, and his claims against Defendant Newsome must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### E. Eighth Amendment

Plaintiff alleges his Eighth Amendment rights were violated by medical staff at PVSP and RJD, who purportedly failed to properly treat his hepatitis C and cirrhosis of the liver. (*See* Compl. at 2–4.) Where a prisoner's constitutional claim is one for inadequate medical care, he must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The plaintiff must first establish a "serious medical need by demonstrating that [the] failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett,* 439 F.3d at 1096 (citation omitted). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

Next, Plaintiff must show that the defendant's response to his objectively serious medical need was deliberately indifferent. *Jett*, 439 F.3d at 1096. To establish deliberate indifference, a prisoner must allege facts to show: (1) a purposeful act or failure to respond to the prisoner's pain or possible medical need; and (2) harm caused by the indifference. *Id.* "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting

*Farmer v. Brennan*, 511 U.S. 828, 837 (1994)). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002).

While Plaintiff's allegations of being diagnosed with hepatitis C and cirrhosis of the liver are sufficient to meet the Eighth Amendment's objective requirements, *see Jett*, 439 F.3d at 1096 (a medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain), he must further allege facts sufficient to show that each individual person he seeks to sue "kn[e]w of and disregard[ed] an excessive risk to [his] health or safety." *Farmer*, 511 U.S. at 837; *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

1. Akinwuml

Plaintiff alleges that while confined at PVSP, he received inadequate medical care from Akinwuml, a physician at PVSP. (Compl. at 4.) Plaintiff, however, does not allege any specific facts as to how Akinwuml's conduct amounted to deliberate indifference to his medical needs. He states only that Akinwuml "failed to administer proper medical treatment" and as a result his condition "became worse" in the days and months before his transfer to RJD, ultimately resulting in his hepatitis C "turn[ing] into cirrhosis of the liver." (*Id*.) Plaintiff attaches to his Complaint a document dated and signed by "Akinwuml OLA M.D.," on March 16, 2015, which shows Plaintiff was scheduled for an "On-Site Liver Biopsy." (*Id.*, Ex. A at 9.) A report from "Quest Diagnostics" dated March 25, 2015, indicates that Plaintiff received the biopsy on March 19, 2015. (*Id.*, Ex. B at 17.) The report states that the biopsy showed "chronic hepatitis (Hepatitis C, Clinical Diagnosis) with Grade 2 activity and state 1-2 fibrosis." (*Id.*) The report further states that "no evidence of septal fibrosis or cirrhosis is seen." (*Id.*)

///

Plaintiff does not allege any specific facts as to what Defendant Akinwuml did, or failed to do, with regard to his medical treatment. Beyond ordering a liver biopsy, Plaintiff does not specify how Akinwuml's treatment impacted his medical condition or explain how Akimwuml caused him harm. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1991) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Thus, as currently pleaded, Plaintiff's Complaint fails to adequately state an Eighth Amendment claim of deliberate indifference to a serious medical need as to Defendant Akinwuml.[3]

### 2. Roberts, Saidro and Sazon

Plaintiff also that members of the medical staff at RJD, Saidro, Roberts and Sazon, failed to adequately treat his hepatitis C and resulting cirrhosis. (Compl. at 2–3.) Plaintiff fails, however, to include any further "factual content" to show that any of these defendants acted with "deliberate indifference to [his] serious medical needs." *Jett*, 439 F.3d at 1096 (quoting *Gamble*, 429 U.S. at 104). In order to be deliberately indifferent, a defendant's acts or omissions must involve more than an ordinary lack of due care, as

---

[3] The Court notes that even if Plaintiff had pleaded facts sufficient to state a plausible inadequate medical care claim as to Akinwuml, it appears from the face of his Complaint that those claims are time-barred. Federal courts apply the forum state's statute of limitations for personal injury actions. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). The limitations period in California for such actions is two years, *id*. (citing Cal. Civ. Proc. Code § 335.1), and is tolled for two years for inmates serving less than a life sentence. Cal. Civ. Proc. Code § 352.1; *see also Wallace v. Kato*, 549 U.S. 384, 394 (2007) (noting that the law of the forum state also governs tolling). A § 1983 cause of action accrues "and the statute of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*, 549 U.S. at 391. Plaintiff's Complaint was filed on April 3, 2020, but his claim as to Dr. Akinwuml is alleged to have arisen in March 2015. (*See* Compl. at 4.) Thus, Plaintiff alleges the wrongful acts by Akinwuml which caused him harm occurred more than five years before he initiated this suit. This date of accrual exceeds California's statute of limitations, even including all presumed periods of tolling provided by statute. *Wallace*, 549 U.S. at 391. Therefore, Plaintiff's claim against Akinwuml, is also subject to sua sponte dismissal because, as currently pleaded, it is clear from the face of his Complaint that his claim barred by the statute of limitations. *See Von Saher*, 592 F.3d at 969. Should Plaintiff choose to amend this claim, he must also allege facts which, if proved, might support tolling. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1276–77 (9th Cir. 1993).

"[a] difference of opinion" between a doctor and an inmate, or even between medical professionals, regarding what medical care is appropriate "does not amount to a deliberate indifference." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (citing *Gamble*, 429 U.S. at 107).

Plaintiff alleges that Roberts, Saidio and Sazon "allowed [his hepatitis C] turn into cirrhosis" despite the fact that he had been "going to the medical department for hepatitis C for the longest time for treatment." (Compl. at 3.) But Plaintiff's Complaint contains no facts whatsoever which show that any of these Defendants acted with deliberate indifference to any excessive risk to his health. *See Farmer*, 511 U.S. at 837. Moreover, the exhibits Plaintiff attached to his Complaint reveal only one reference to Roberts.[4] On November 6, 2018, "S. Roberts, M.D., Chief Medical Executive, Richard J. Donovan Correctional Facility" signed the "Institutional Level Response" to Plaintiff's Healthcare Grievance, Tracking #RJD HC 18002418. (*Id.*, Ex. B at 35.) The only specific references to Saidro and Sazon in the Complaint and exhibits also relate to the Institutional Level Response to Healthcare Grievance Tracking #RJD HC 18002418, which was signed by "A. Sazon, RN" on September 4, 2018, and "L. Saidro, M.D.," who interviewed Plaintiff on October 18, 2018. (Compl. Ex. B at 14.)

The Institutional Response states, in part:

> On 10/18/18, you were interviewed by L. Saidro, Physician and Suregeon (P&S) regarding this healthcare grievance. . . [Y]ou were provided the opportunity to express your concerns. Dr. Saidro explained to you that you were being monitored every 6 months with ultrasounds and every 1 to 2 years [with] EGD for your cirrhosis by gastroenterology. Dr. Saidro

---

[4] While "it is not the Court's duty," when screening a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A "to wade through exhibits to determine whether cognizable claims have been stated," *Woodrow v. Cty. of Merced*, No. 1:13-cv-01505-AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015), the Court has reviewed Plaintiff's exhibits to the extent they appear relevant to his medical care claims. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (reaffirming liberal construction of pro se pleadings after *Iqbal*).

> explained that you were treated [for] hepatitis C successfully and there is no need to be seen by a hepatologist.

(*Id.*, Ex. B at 34.) Plaintiff was also informed that he would continue to be monitored. (*Id.*)

These facts, as alleged by Plaintiff, even when supplemented by his exhibits, lack the "further factual enhancement" required to plausibly show Roberts, Sazon or Saidro's "purposeful act[s] or failure[s] to respond to [his]. . . medical need," or any "harm caused by [this] indifference." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557); *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). Instead, Plaintiff offers only the type of "labels and conclusions" or "formulaic recitation[s] of the elements of a[n] [Eighth Amendment] cause of action that will not do." *Iqbal*, 662 U.S. at 678 (citing *Twombly*, 550 U.S. at 555.) To be deliberately indifferent, Defendants' acts or omissions must involve more than an ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122. Plaintiff must plead facts sufficient to "show that the course of treatment the doctor[ ] chose was medically unacceptable under the circumstances and that the defendant[ ] chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citation and internal quotations omitted).

Because Plaintiff's Complaint contains no facts sufficient to show that Roberts, Sazon, or Saidro acted with deliberate indifference to his plight by "knowing of and disregarding an[y] excessive risk to his health and safety," *Farmer*, 511 U.S. at 837, he fails to state an Eighth Amendment claim upon which § 1983 relief can be granted. *See Toguchi*, 391 F.3d at 1058.

F.  Due Process/Access to Courts

Plaintiff also claims Defendant M. Glynn denied him due process and access to courts by failing to properly act on his inmate grievances related to his medical treatment for hepatitis C and cirrhosis. (*See* Compl. at 5.) But he does not include any specific factual allegations to describe what actions Glynn took, beyond reviewing and signing

Plaintiff's Healthcare Grievance, tracking #RJD HC18002418 (*see* Compl. Ex. B at 14) and the Institutional Response ("Response") to the grievance on November 7, 2018 (*id.* at 35). In the grievance, Plaintiff complained he received inadequate medical care for his hepatitis. He requested to be seen by a specialist, be put on a transplant waiting list, and be considered for clinical trials. (*See id.*)

The Response to Plaintiff's grievance indicates he was "being monitored every 6 months with ultrasounds and every 1 to 2 years and [an] EGD [esophagogastroduodenoscopy] for [his] cirrhosis by gastroenterology." (*Id.* at 34.) The Response further notes Plaintiff was "treated [for] hepatitis C successfully." (*Id.*) Finally, the Response concludes that Plaintiff was not entitled to the relief he sought, including being put on the transplant list and participation "experimental treatments." (*Id.*)

To the extent Plaintiff alleges Glynn violated his due process rights by improperly processing or denying Healthcare Grievance, Tracking #RJD HC18002418, or any other particular grievance or appeal, this cannot serve as an independent basis for section 1983 liability. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (stating prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *McRoy v. Roe*, 509 Fed. Appx. 660, 660 (9th Cir. 2013) (affirming dismissal of claims arising from defendants' processing of grievances); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (stating due process is not violated simply because defendant fails properly to process grievances submitted for consideration); *see also Todd v. California Department of Corrections and Rehabilitation*, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (concluding the district court properly dismissed claim based on improper "processing and handling of […] prison grievances," since prisoners have no "constitutional entitlement to a specific prison grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted); *Shallowhorn v. Molina*, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (holding district court properly dismissed section 1983 claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860); *Daniels v. Aguilera*, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018), report and

recommendation adopted sub nom. *Daniels v. Aguillera*, 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances."). Simply "'[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation.'" *Ellington v. Clark*, 2010 WL 3001427, at *2 (E.D. Cal. Jul. 29, 2010) (quoting *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)); *Valdivia v. Tampkins*, 2016 WL 7378887, at *6 (C.D. Cal. Dec. 19, 2016) (sua sponte dismissing claims predicated upon the alleged improper processing of inmate grievances)

      Moreover, to the extent Plaintiff also invokes his right to access to the courts, he also fails to state a claim against Glynn. Prisoners have a constitutional right to access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). But the right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id.* at 354. Claims for denial of access to court may arise from the frustration or hindrance of "a litigating opportunity yet to be gained," or from the loss of a suit that cannot now be tried. *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002); *see Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference"). However, the threshold requirement for any claim based on the denial of access to court is the allegation of an "actual injury." *See Lewis*, 518 U.S. at 351–53; *Silva*, 658 F.3d at 1104. "[A]ctual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348; *see Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge").

      While Plaintiff alleges that Glynn improperly processed his inmate grievance, he does not explain how or why this deprivation resulted in any "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing

deadline or to present a claim." *See Lewis*, 518 U.S. at 348; *Iqbal*, 556 U.S. at 678; *Jones*, 393 F.3d at 936. The failure to allege an actual injury is fatal to a claim for denial of access to court. *See Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a non-frivolous legal claim had been frustrated is fatal.") (internal quotation marks omitted).

For these reasons, Plaintiff also fails to state any plausible due process or access to court claim against Defendant Glynn. *See Iqbal*, 556 U.S. at 678–79 (citations omitted); 28 U.S.C. §§ 1915(e)(2)(b)(ii), 1915A(b)(1); *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### G. Leave to Amend

Because the Court finds Plaintiff's Complaint fails to state any § 1983 claim upon which relief can be granted, it must be dismissed sua sponte and in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121. Because Plaintiff is proceeding pro se, however, the Court having now provided him with "notice of the deficiencies in his complaint," will also grant him an opportunity to fix them. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). As to Plaintiff's purported claim against Governor Newsome, however, the Court denies leave to amend as futile. *Id.* (leave to amend is not required if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal citations omitted).

### H. Motion to Transfer

Plaintiff has also filed a "Request to Transfer Case to the Appropriate District." (ECF No. 6.) In it, Plaintiff asks that the Court transfer this case to "its proper venue" in the United States District Court for the Eastern District of California. (*Id.* at 1.)

Section 1391(b) of Title 28 of the U.S. Code provides, in relevant part, that a "civil action may be brought in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim

occurred, or a substantial part of property that is the subject of the action is situated ….." 28 U.S.C. § 1391(b); *Costlow*, 790 F.2d at 1488; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

As discussed above, Plaintiff alleges constitutional violations arising out of events occurring at PVSP and RJD. (*See* Compl. at 2–4.) PVSP is located in Coalinga, California, located in Fresno County, which is part of the Eastern District of California. *See* 28 U.S.C. § 84(b). RJD is located in San Diego County and therefore part of the Southern District of California. *See* 28 U.S.C. § 84(d). Because events or omissions giving rise to Plaintiff's claims are alleged to have occurred in the County of San Diego, and several Defendants are alleged to have been employed at RJD and to reside here, venue is proper in the Southern District of California. (See Compl., at 2.) Therefore, Plaintiff's Motion to Transfer must be DENIED.

### III. Conclusion and Orders

For the reasons discussed, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2) and **DENIES** Plaintiff's Motion to Transfer Jurisdiction (ECF No. 6).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $52.86 initial filing fee assessed, *if those funds are available at the time this Order is* executed, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDNETIFIED BY THE NAME AND NUMBER ASSIGNED TO HIS ACTION.

3. **DIRECTS** the Clerk of Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.     **DISMISSES** this civil action *sua sponte* based on Plaintiff's failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

5.     **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted, as to *all Defendants Akinwuml, Roberts, Sairdo, Sazan, and Glynn only*.

Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. See S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: June 4, 2020

_____
Hon. John A. Houston
United States District Judge